IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ABIGAIL ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-484-TCK-PJC |
| | ) | |
| UNIVERSITY OF TULSA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Partial Motion to Dismiss (Doc. 8), which seeks dismissal of Plaintiff's claim for negligence per se. For reasons explained below, the motion is granted.

**I.    Factual Allegations**

Plaintiff Abigail Ross alleges that on January 27, 2014, while a student at the University of Tulsa ("TU"), she was raped by Patrick Swilling, Jr. ("Swilling"). Swilling was a member of the TU men's basketball team who had transferred from the College of Southern Idaho. Plaintiff reported the rape to the Tulsa Police Department ("TPD"). During their investigation, the TPD located three prior reports of sexual assault by Swilling. One woman reported that Swilling raped her while they were both students at the College of Southern Idaho. Two other women, both TU students, reported being raped and/or assaulted by Swilling on the TU campus. Plaintiff alleges that TU knew of "at least one, and as many as three prior allegations of sexual assault and misconduct perpetrated by Swilling and permitted Swilling to continue to attend TU." (Compl. ¶ 22.)

Plaintiff reported the rape to TU officials on February 11, 2014, and TU scheduled a disciplinary hearing for Swilling based on Plaintiff's complaint. After Plaintiff's counsel advised TU that Title IX required it to conduct an investigation prior to any disciplinary hearing, TU vacated the hearing date and conducted a brief investigation. On March 24, 2014, TU Dean Yolanda Taylor

("Taylor") conducted a hearing, during which Plaintiff and Swilling testified. Taylor found in favor of Swilling and ruled that he would not suffer any discipline or other consequences. Taylor did not consider reports of prior assaults by Swilling in reaching her decision. After the hearing, "[g]iven Swilling's presence on the small campus, Plaintiff was now terrified of attending TU" and withdrew from classes. (*Id.* ¶ 36.) In June 2014, TU announced that Swilling would continue to attend TU and would play for the football and basketball teams.

Plaintiff asserts the following claims against TU: (1) violation of Title IX, 20 U.S.C. § 1681(a), based upon TU's deliberate indifference to prior sexual violence by Swilling and creation of a substantial risk that Swilling would sexually harass or assault other female students at TU; (2) violation of Title IX, 20 U.S.C. § 1681(a), based upon TU's deliberate indifference to Plaintiff's report of rape, including conducting a "gender biased investigation of Plaintiff's report of sexual harassment/rape by choosing to investigate Plaintiff's consensual sexual history and refusing to investigate three prior reports of rape alleged to have been committed by Swilling" and failing to consider prior allegations during the disciplinary hearing. (*Id.* ¶ 51); (3) negligence per se, based upon TU's violation of Title IX and its implementing regulations; (4) negligence, based upon TU's breach of a duty to protect Plaintiff; (5) negligent supervision, based upon its failure to implement measures to adequately supervise Swilling; and (6) intentional infliction of emotional distress.

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007))). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

**III.     Negligence Per Se**

TU seeks dismissal of Plaintiff's claim for negligence per se, which arises under Oklahoma common law. "The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties." *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013). "When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence per se." *Id.*; *see also* Okla. Unif. J. Instr. 9.10 ("In addition to the duty to exercise ordinary care there are also duties imposed by [statutes/ordinances]."). Typically, violations of local ordinances, such as traffic laws or safety codes, form the basis of negligence per se claims. *See, e.g., Boyles v. Okla. Nat. Gas*, 619 P.2d 613, 618 (Okla. 1980) (violation of local mechanical code related to "shutting off" gas constituted negligence per se in case involving gas explosion). However, the Oklahoma Supreme Court has held that violations of federal statutes or regulations may also form the basis of negligence per se claims, even where the United States has the exclusive power to enforce such regulations. *Howard*, 299 P.3d at 467-69 (holding that recipient of knee implant, which allegedly had oily residue on it when implanted, could premise a negligence per se claim upon violation of federal regulation requiring manufacturers to establish procedures for removing substances from medical devices prior to sale). Regardless of whether a local or federal statute is at issue, the following elements must be shown in order to establish a negligence per se claim: (1) the claimed injury is of a type intended to be prevented by the statute or regulation; (2) the injured party is a member of the class intended to be protected by the statute or regulation; and (3) the claimed injury was caused by the statutory or regulatory violation. *Id.* at 467.

In this case, Plaintiff's claim for negligence per se is premised upon TU's alleged violation of Title IX and its implementing regulations. (Compl. ¶ 60.) Plaintiff has not specified in her

Complaint or response brief which "implementing regulations" TU allegedly violated. It is therefore unclear whether Plaintiff's theory is that TU was negligent per se based upon its violation of Title IX's non-discrimination mandate, *see* 20 U.S.C. § 1681(a), or its violation of some specific provision of Title IX's regulatory scheme, *see* 34 C.F.R. § 106.1, *et seq.* The Court will address each possibility.

### A.     20 U.S.C. § 1681(a)

Title IX contains the following nondiscrimination mandate:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).  Under its statutory terms, Title IX may be enforced only through "administrative" mechanisms. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998) (explaining that federal agencies "establish requirements to effectuate the nondiscrimination mandate" and then enforce those requirements by terminating federal funds). The Supreme Court has held that Title IX may also be enforced through a private right of action for money damages, but only when the recipient of federal funds has actual notice of the alleged discrimination and responds with deliberate indifference to that discrimination. *Id.* at 290-91 (addressing teacher-on-student sexual harassment); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (adopting same standard for student-on-student sexual harassment). Thus, while a private right of action exists, it requires more than mere negligence by school officials. *See id.* at 641.

The Court concludes that 20 U.S.C. § 1681(a) – which is a general nondiscrimination mandate – does not establish any statutory standard that may substitute for the general common law standard. Unlike a regulatory standard that sets forth a specific requirement or best practice relevant

5

to the fact pattern of a given case – such as avoiding leaving foreign substances on a medical implant – the "standard" set by Title IX is simply to avoid sex discrimination in educational programs or activities. This lacks the specificity necessary to provide any meaningful "substitute" for common law duties of reasonable care. *See Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954, 964-65 (W.D. Tenn. 1995) (finding that Title VII, another non-discrimination statute, was "not the type of law that the negligence per se doctrine was meant to encompass" and that negligence per se claims generally may be supported "only by statutes and regulations relating to public safety, such as health regulations and rules of the road").

### B. Regulations – 34 C.F.R. § 106.1, *et seq.*

With respect to the Complaint's reference to Title IX's "implementing regulations," Plaintiff failed to identify any specific Title IX regulation that has been breached. This theory of negligence per se theory is insufficiently pled because TU does not have notice of what Title IX regulation is at issue. *See Robbins*, 519 F.3d at 1247 (allegations must provide fair notice of claim). In addition, the Court finds that amendment would be futile regardless of what regulation TU allegedly breached. Allowing a Title IX regulatory violation to establish a negligence per se claim is inconsistent with the Supreme Court's holding in *Gebser* that a defendant must act with "deliberate indifference" in order to subject itself to money damages. *See Doe v. Univ. of South*, No. 09-cv-62, 2011 WL 1258104, at *2 (E.D. Tenn. Mar. 31, 2011) ("If the Court were to allow a regulation used in administering a federally-created right to create a state negligence per se claim, it would effectively eviscerate the *Gebser* rule.") (viewing assertion of Title IX regulations as "standard of care" in a negligence per se claim as attempt by plaintiffs to make an end-run around *Gebser*'s heightened

liability standards).[1] Therefore, Title IX's implementing regulations may not provide the basis of a negligence per se claim, and Plaintiff's claim fails as a matter of law.[2] To the extent Plaintiff seeks to hold TU liable under a negligence theory, it must do so under common-law principles and without the benefit of any "per se" instruction premised on a Title IX statutory or regulatory violation. *See generally Davis*, 526 U.S. at 644 (explaining that "state courts routinely uphold claims alleging that schools have been negligent in failing to protect their students from the torts of their peers").

## IV. Conclusion

Defendant's Partial Motion to Dismiss (Doc. 8) is GRANTED, and Plaintiff's claim for negligence per se is dismissed with prejudice.

SO ORDERED this 2nd day of July, 2015.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE

---

[1] In *Doe*, the Title IX regulation allegedly breached was 34 C.F.R. § 106.8(b), which requires adoption and publication of "grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

[2] TU's main argument in favor of dismissal relates to Plaintiff's failure to adequately allege causation. However, the Court was not persuaded by this argument, and the Court's holding is not based upon Plaintiff's failure to satisfy any particular element of the three-part test identified above. Indeed, Plaintiff is a member of the class intended to be protected by Title IX (female), her alleged injury is of a type the statute seeks to avoid (discriminatory deprivation of educational benefits), and such injury was allegedly caused by the Title IX violation (discriminatory handling of rape complaint led to withdrawal from TU). In this case, dismissal is proper before ever reaching the three-part test because the federal statutes/regulations cited in the Complaint may not be logically or reasonably "substituted" for the common-law standard of care.

7