**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ABIGAIL ROSS, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-CV-484-TCK-PJC |
| ) | |
| UNIVERSITY OF TULSA, ) | |
| ) | |
|       **Defendant.** ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Civil Contempt ("Motion for Contempt"), in which Defendant the University of Tulsa ("TU") seeks a citation of civil contempt and sanctions against Plaintiff and her counsel for "multiple intentional violations of protective orders concerning evidence produced in this case." (Doc. 311 at 1.) TU seeks relief pursuant to the inherent power of the Court and Federal Rule of Civil Procedure 37(b)(2)(A)(vii).

TU contends Plaintiff and her counsel impermissibly provided the following materials to a local journalist: (1) CD of an audio interview of Jane Doe 1 ("Jane Doe 1 Audio"); (2) sealed motion filed by TU entitled "Defendant's Motion to Introduce Plaintiff's Sexual Behavior Pursuant to 412(b)(2)" ("Motion to Introduce Sexual Behavior") or the substance thereof; (3) video interview of Patrick Swilling ("Swilling Video"); (4) "Supplementary Offense Report" by Tulsa Police Department ("TPD") Officer Eric Leverington ("TPD Report"); (5) Consent for Forensic Medical Exam, Treatment and Release of Evidence and Information form signed by Plaintiff ("Consent Form"); (6) deposition of Yolanda Taylor ("Taylor Deposition"); (7) deposition of Zachary Livingston ("Livingston Deposition"); and (8) the entirety of text messages retrieved by TPD from Plaintiff's phone ("Texts"). TU also contends that comments ("Comments") made to the journalist

by Plaintiff's attorneys, John Clune ("Clune") and Spencer Bryan ("Bryan"), impermissibly referenced confidential and protected information.

The Court conducted a sealed evidentiary hearing on September 28, 2016 on the Motion for Contempt. Bryan attended the hearing on behalf of Plaintiff. Neither Plaintiff nor Clune attended or were called as witnesses. TU called four witnesses, including Gerald Bender ("Bender"), attorney for the City of Tulsa; Bryan; David Lackey ("Lackey"), lead counsel for TU; and June Brown ("Brown"), Secretary to the TU Board of Trustees. Plaintiff did not call any witnesses.

**I.    Factual Background**

Plaintiff reported to TU that she was sexually assaulted by TU student-athlete Patrick Swilling ("Swilling"). After conducting a hearing, TU failed to take disciplinary action against Swilling. Plaintiff filed this lawsuit alleging violations of Title IX and Oklahoma law based on TU's conduct before and after her alleged assault. After a lengthy discovery period, the Court granted TU's motion for summary judgment by a published Opinion and Order. *Ross v. Univ. of Tulsa*, --- F.3d ---, 2016 WL 1545138 (N.D. Okla. Apr. 15, 2016). Plaintiff appealed, and the matter is pending before the Tenth Circuit Court of Appeals.

Early in the litigation, on October 31, 2014, the parties and non-party Tulsa County District Attorney's Office ("TCDA") filed a Joint Motion for Protective Order after Plaintiff sought documents related to TPD's criminal investigation of Swilling. The Court granted the motion and entered a protective order ("Protective Order") (Doc. 19).[1] The Protective Order, which is binding upon parties and their attorneys, contains the following relevant provisions:

---

[1] The City of Tulsa also produced documents pursuant to this subpoena labeled COT 1-536, but it is not a party to the Protective Order.

"Confidential Information" as used herein means any Designated Material that is designated pursuant to this Protective Order as "Confidential" by the Supplying Party, *limited to the identities and/or contact information of potential victims of Patrick Swilling, Jr.*, whether it is contained in a document, revealed during a deposition or other testimony, revealed in an interrogatory answer or otherwise revealed.

. . .

Subject to Paragraph 11(c),[2] all documents and other materials produced in this litigation shall be used only for purposes of this litigation *whether or not* a Supplying Party designates such documents or materials as "Confidential."

. . .

In the case of depositions and the information contained in depositions (including exhibits), designation of the portions of the transcript (including exhibits) which contain Confidential Information shall be made by a statement to such effect on the record in the course of the deposition by counsel for the party or witness producing such information, or by letter from such counsel within thirty (30) days of receipt of the deposition transcript or copy thereof (or written notification that the transcript is available). The entire deposition transcript (including exhibits) shall be treated as Confidential under this Order until the expiration of the above-referenced thirty-day period for designation by letter, except that the deponent may review the transcript of his or her own deposition during this thirty-day period. After the expiration of the thirty (30) day period, the following legend shall be conspicuously placed on the front and back of any original deposition transcript, and on each copy thereof, which contains Confidential Information: "CONTAINS CONFIDENTIAL INFORMATION." . . . .

. . .

The filing of any documents and materials with the Court containing or reflecting the contents of Confidential Information shall be governed by LCvR 79.1 and Northern District General Order 08-11. . . . *No party or other person may have access to any sealed document from the files of the Court without an order from the Court*.

. . .

Subject to Paragraph 11(c), Confidential Information shall not be used by any person, other than the Supplying Party, for any purpose other than conducting this Proceeding, *Abigail Ross v. The University of Tulsa*, Case No. 14-CV-484-TCK-PJC . . . and in no event shall such information be used for any business, competitive, personal, private, public or other purpose.

(Doc. 19 at ¶ 1(c),¶ 1(e); ¶ 2(c), ¶ 2(f); ¶ 3 (footnote and emphases added).)

---

[2] Paragraph 11(c) governs procedures to follow when a party or person in possession of "Confidential Information" receives a subpoena requesting the information.

3

On December 31, 2014, the parties filed a Joint Motion for Protective Order after Plaintiff sought documents from TU. The Court granted the motion and entered a protective order ("Second Protective Order") (Doc. 24). The Second Protective Order is identical to the first except it defines confidential information as

> the identities and/or contact information of potential victims of Patrick Swilling, Jr., any materials protected by FERPA, HIIPPA, or any other federal privacy law/regulation, and any documents referring to past or current student(s) of the University by name or other identifier, whether it is contained in a document, revealed during a deposition or other testimony, revealed in an interrogatory answer or otherwise revealed.

(Doc. 24, ¶ 1(c).) The Protective Order and Second Protective Order are collectively referred to as the "Protective Orders."

On April 7, 2016, the Court entered the Order granting TU's motion for summary judgment under seal but stated its intent to unseal and publish the Order. The Court gave the parties an opportunity to object to unsealing or request that the Court conceal certain information prior to unsealing. TU did not object to unsealing or request any redactions. Plaintiff objected to the Court's use of two alleged prior victims' names and requested use of Jane Doe 1 and Jane Doe 2. The Court entered an unsealed Amended Opinion and Order using Plaintiff's requested pseudonyms. It is not this Court's practice to exercise caution in describing record evidence in a public proceeding. However, this case required discussion of intimate details regarding alleged victims of sexual assault. These individuals were not parties to the case and did not voluntarily inject themselves into the controversy. The Court and parties exercised caution to protect these individuals' privacy to the extent possible.

On June 17, 2016, *The Frontier,* a Tulsa online newspaper, published an article ("Article") entitled, "She said, she said, she said: Did TU fail to investigate sexual assault allegations?" TU

4

contends that certain factual information in the Article could only have been obtained through documents produced in this litigation, all of which were subject to restrictions in the Protective Orders and/or sealed by the Court. Speculating that Plaintiff or her counsel must have provided these materials, TU filed the Motion for Contempt and requested an evidentiary hearing.

On August 5, 2016, Plaintiff filed an Opposed Motion to Amend the Protective Orders to Permit Review of Previously Sealed Records by Amicus Curiae (Doc. 316). Plaintiff requested permission for amicus parties to review sealed portions of the summary judgment record for purposes of the appeal. United States Magistrate Judge Paul Cleary denied the motion based on Plaintiff's failure to show good cause for modification.[3]

On August 18, 2016, the parties filed a Joint Notice of Stipulation regarding the Motion for Contempt, stating:

> The parties have conferred and in the interest [of] either removing or substantially limiting the need for evidence at the hearing, Plaintiff stipulates that Plaintiff's counsel [Bryan] provided the materials in question to the journalist at *The Frontier*. Plaintiff will further supplement the record as to the manner and nature of the disclosures under a separate filing.

(Doc. 319.) Bryan simultaneously filed a Notice Regarding the Hearing, stating that he and he alone disclosed the materials.[4] Bryan stated:

> While information was disclosed to *The Frontier*, the undersigned submits those disclosures were not made in disregard of the protective orders. As detailed below, each disclosure was preceded by an evaluation of the particular material or

---

[3] It is unclear why Plaintiff's counsel sought permission to reveal certain sealed documents to amicus parties but did not seek that same permission prior to revealing sealed documents to the journalist.

[4] The Court doubts Bryan acted without consulting Clune. Clune is quoted in the Article and was likely aware of the journalist's requests for information. Nonetheless, Bryan stipulated that he disclosed the materials based on his own examination and interpretation of the Protective Orders. Therefore, any civil contempt violation will be against Bryan.

5

> information, and compared to the terms of the protective orders as drafted. No disclosures occurred until after the undersigned had concluded that the material in question was not protected.

(Doc. 320 at 2.) Bryan contends his disclosures did not violate the Protective Orders. Alternatively, he contends any violations do not warrant a finding of civil contempt because they were based upon a reasonable, good-faith interpretation of the Protective Orders.

## II.     Interpretation of the Protective Orders

"The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010). All interpretive disputes in this case can be resolved by the plain language of the Protective Orders.

### A.     Paragraph 1(e)

Paragraph 1(e) provides that "all documents and other materials produced in this litigation shall be used only for purposes of this litigation whether or not a Supplying Party designates such documents or materials as "Confidential."" This is standard language that appears in the form protective order available on the Court's website. The provision refers to "non-confidential protected documents." *Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2013 WL 211096, at *1 (N.D. Okla. Jan. 18, 2013). This provision clearly and unambiguously prevents parties or their attorneys from using *any* documents produced in the litigation for outside purposes until a court grants relief from the protective order. *See id.* (explaining that even non-confidential documents could only be used for purposes of the litigation). This language is not a windfall for the producing party because "the receiving party receives the benefit of avoiding discovery disputes and other problems that often arise over production of confidential documents." *See id.* at *4. Nor does the Court have overarching concerns about the public's right to all pre-trial discovery materials. *id.* (explaining that the public does not have unfettered right to pre-trial discovery materials in any case deemed to be of public interest).

6

Bryan urges an incorrect and unreasonably narrow interpretation of ¶ 1(e). Bryan contends "the policy advanced by the clause relate[s] to potential issues such as initiating sham litigation to acquire records unrelated to any legitimate legal complaint." (Doc. 320 at 6.) During the hearing, Bryan argued the language was intended to prevent, for example, filing a federal case solely to obtain records that are undiscoverable in state court. No judge in this district has interpreted this standard provision in such a narrow manner, and it is contrary to the plain language.

Bryan further contends that any broader interpretation would prevent use of discovery documents for outside purposes, even after they are publically filed. This argument, whether legally tenable or not, is factually irrelevant here. As explained below, none of the materials provided by Bryan had been publically filed or unsealed by the Court prior to their disclosure. Where discovery produced pursuant to a protective order has actually been publically filed without objection, an attorney can direct the journalist to the public record. That avoids the attorney "using" the discovery material in an improper manner, avoids even the appearance of violation, and ensures the discovery material is indeed publically available. In this case, Bryan could not simply direct the journalist to public docket entries because all relevant materials were sealed in this Court's records.

Bryan also argues that a "broad interpretation of the clause would defeat the purpose of designating material as 'Confidential.'" (Doc. 320 at 5.) This argument is also incorrect and unreasonable. The use limitation in ¶ 1(e) is redundant with the use limitation in ¶ 3; more specifically, ¶ 1(e) encompasses ¶ 3. However, the "confidential" designation carries with it greater protections and stricter procedures than simply the use limitation set forth in ¶ 3. Those additional protections and procedures are set forth in ¶¶ 2 and 4. For example, parties are forced to file "Confidential Information" under seal in accordance with Northern District Local Rule 79.1. Paragraph 1(e) serves the distinct purpose of clarifying, at the outset of the protective order, that

there are certain restrictions on all discovery, "whether or not" the producing party designates the material as confidential.

Accordingly, the Court interprets ¶ 1(e) to prevent use of any and all discovery, whether marked confidential or not, for purposes other than the litigation. Bryan violated ¶ 1(e) if and to the extent he used protected, non-confidential information for purposes other than this litigation.

**B.     Paragraph 2(f)**

Paragraph 2(f) governs the filing of materials that contain or reflect the contents of "Confidential Information" and requires parties to file a motion to seal. If the Court grants the motion to seal, the documents are labeled "Confidential Information - Subject to Court Order" and must bear the legend "Filed Under Seal" on the cover page. Consistent with this district's policy in favor of public proceedings, the Protective Orders instruct parties to "minimize filings that necessitate the filing of documents and materials designated Confidential under seal." However, ¶2(f) provides that once filed under seal with permission of the Court, "[n]o party or other person may have access to any sealed document from the files of the Court without an order of the Court."

Acknowledging, as he must, that materials provided to the journalist were sealed Court records, Bryan argues that he "did not locate any provision that converted non-protected documents to 'Confidential' status by filing that document under seal without designation." (Doc. 320 at 9.) Bryan "concluded that the method of designation set forth in the Court's protective orders superseded the manner in which the parties may have treated a particular document when filing." (*Id.*)

This interpretation of ¶ 2(f) is also incorrect and unreasonable. Bryan's position is that, if an attorney concludes a record was improperly or unnecessarily sealed by the Court, attorneys have the liberty to disclose it at will. In other words, the parties' failure to designate as "confidential" is

8

controlling and trumps the sealed status of a Court record. This argument ignores a step in the process – namely, the Court's role in granting the motion to file under seal. Whether the parties accurately or inaccurately utilized the ¶ 2(f) procedure becomes of little consequence once the Court grants the motion to seal. At that point, the Court has given sealed status to the document or exhibit. Bryan's interpretation would give attorneys unilateral authority to ignore the Court's sealing order based on their own conclusion as to what was properly designated "confidential" under the terms of a protective order. The Court reaches the same conclusion with respect to documents that a party files under seal without permission, so long as the Court does not unseal or strike pursuant to its own motion or motion of an opposing party.

Therefore, if a document remains completely sealed in the Court record, the parties must comply with § 2(f) until the Court unseals the record or grants permission for disclosure. If a document is sealed in some places and not others, the attorney's safest course is to request permission to disclose.

The reality of litigation involving significant amounts of confidential information and exhibits is that parties may become laxidasical about the process. Parties "overseal" to avoid the hassle of redacting and filing separate exhibits, resulting in sealed records that may or may not contain "confidential information," as that term is defined in the relevant protective order.[5] Courts play a role by granting motions to seal without carefully reviewing the motion in conjunction with the relevant protective order to determine if sealing is necessary and proper. However, if properly followed, Local Rule 79.1 and N.D. General Order 08-11 prevent these types of problems.

---

[5]At the hearing, Bryan admitted that he was now more vigilant about moving to seal only those materials containing "confidential information."

9

"Oversealing," either by acquiescence of the parties or imprimatur of the Court, results in non-confidential information being sealed in the Court's record. When this occurs, parties must seek court permission before disclosing the document to non-parties or face the risk of violating § 2(f). Accordingly, Bryan violated § 2(f) if and to the extent he disclosed a document or exhibit that was filed exclusively under seal and therefore not part of the public record, regardless of whether it satisfied the definition of "Confidential Information" or was marked "Confidential" in the first instance.

### C.     Paragraph 3

As explained above, ¶ 3 provides that Confidential Information may only be used for purposes of the litigation. "Confidential Information" is defined as quoted above in the respective Protective Orders. In order to properly designate confidentiality, the Protective Orders instruct:

> a. Specific documents produced by a Supplying Party shall, if appropriate, be designated as "Confidential" by marking the first page of the document and each subsequent page thereof containing Confidential Information with the legend: "CONFIDENTIAL" or "CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER."

(Docs. 19 & 24, ¶ 2(a).)

The question related to this provision is the effect of labeling a document or page "confidential" as set forth above, when that page contains both confidential and non-confidential information. Bryan contends that, even if the first page and/or subsequent pages are designated "confidential," the documents are only confidential to the extent they contain information satisfying the definitions in the Protective Orders. The Court agrees with Bryan's interpretation of ¶ 3. The purpose of the "confidential" designation on the cover or specific page of the document alerts others that the document contains confidential information. However, ¶ 3 only prevents use of "confidential information," as that term is defined in the Protective Orders, outside the litigation.

Accordingly, the Court finds that Bryan only violated ¶ 3 to the extent he revealed confidential information, as defined in each of the Protective Orders. At a minimum, the Court finds Bryan's interpretation to be a good-faith, reasonable interpretation of ¶ 3.

### III.     Violations of Protective Orders/Findings of Civil Contempt

A district court enjoys "broad discretion in using its contempt power to require adherence to court orders." *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992). A moving party must prove liability for civil contempt by "clear and convincing evidence." *Id.* at 1210. A violation need not be willful to result in a finding of civil contempt. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). However, a person should not be held in contempt if the action is based on a reasonable and good-faith interpretation of the Court's Order. *Id.*

As an initial matter, the Court denies TU's request to hold Plaintiff or Clune in civil contempt. TU did not present any evidence that Plaintiff or Clune violated any Court order, and Bryan has taken sole responsibility for the disclosures.[6] The Court will analyze each alleged discovery item to determine if Bryan violated any provision of the Protective Orders, as interpreted above.

#### A.     Discovery Materials From TU - Jane Doe Audio

When Bryan provided the Jane Doe Audio to the journalist, he violated three separate provisions of the Second Protective Order. He violated ¶ 3 because TU designated the recording as confidential and because the recording revealed the identity and contact information of a potential victim of Swilling and a former TU student, satisfying the definition in ¶ 1(c). The Court rejects

---

[6] Because Plaintiff did not commit the violation, the Court does not rely upon Rule 37(b)(2)(A)(vii), which applies to "a party or a party's officer, director, or managing agent." Instead, the Court relies upon its inherent power to impose a sanction upon Bryan.

Bryan's argument that, because Lackey played the recording during a deposition prior to first producing it with a confidential designation, this somehow waived or nullified all future treatment of the recording as confidential. This would elevate a possible technical error over all other treatment of this sensitive recording throughout the litigation.

Bryan "used" the confidential information for a purpose other than the litigation – namely, he disclosed it to the press. Bryan justified this disclosure based on assurances that the potential victim's name would not be published, and ultimately her name was not published. Nonetheless, Bryan released an extremely personal audio interview into the public realm after the Court and parties had taken steps to protect that information. This violated ¶ 3 regardless of any assurances Bryan received.

Bryan also violated ¶ 1(e), which prohibits production of non-confidential information for any purpose other than the litigation. This violation extends to the entire content of the Jane Doe Audio and not just her identity and contact information.

Bryan also violated ¶ 2(f) because the Jane Doe Audio only appeared in the Court record under seal, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." The Jane Doe Audio is discussed in the Court's Opinion and Order, which is public record. Nonetheless, protective orders are concerned with produced *materials* and their treatment. Bryan testified repeatedly that the "substance of" a document or recording had been revealed, thereby justifying disclosure of the actual discovery item to the press. However, attorneys are not free to disregard the "sealed" nature of an exhibit because the attorney believes it has been substantively disclosed in other ways. To provide the actual discovery – here, the audio recording – Bryan needed the Court's permission.

The Court finds disclosure of the Jane Doe Audio to be the most serious violation. All parties and the Court were treating this recording with caution due to the sensitive and private nature of the disclosures made by this young woman to a police officer regarding a past event in her life. The Court revealed only what it deemed necessary for purposes of the public resolution of this lawsuit, but Bryan took it upon himself to expand upon that disclosure.

### B. Discovery Materials from TCDA/City of Tulsa

#### 1. TPD Report

The TPD Report was marked "confidential" and contained "confidential information," as defined in the First Protective Order. Bryan provided the TPD Report to the journalist, who then attached two pages of that report to the online Article. Prior to production, Bryan did not redact potential victims' names. Redaction occurred only after TU contacted the publication and requested redaction. Therefore, this production of "confidential information" violated ¶ 3.

Bryan's production of the TPD Report also violated ¶ 1(e), which prohibits production of non-confidential information for any purpose other than the litigation. Bryan also violated ¶ 2(f) because the TPD Report only appeared in the Court record under seal, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." But for Bryan's disclosure, it seems unlikely the TPD Report would have entered the public realm.[7]

#### 2. Swilling Video

TU has not shown by clear and convincing evidence that the CD containing the Swilling Video was marked "confidential" upon its production. It appears Swilling was not questioned about former potential victims at this time, and they are not mentioned by name. Therefore, this

---

[7] The TPD Report was not part of the summary judgment record and was not discussed in the Court's Order.

13

production did not violate ¶ 3. At a minimum, Bryan did not believe he was producing "confidential information" based on a reasonable and good-faith interpretation of ¶ 3.

However, Bryan's production of the Swilling Video clearly violated ¶ 1(e), which prohibits production of non-confidential information for any purposes other than the litigation. Bryan also violated ¶ 2(f) because the Swilling Video only previously appeared in the Court record under seal, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." But for Bryan's disclosure, it seems unlikely the Swilling Video would have entered the public realm.[8]

### 3. Consent Form

The Consent Form is marked "confidential" at the top center of the page. During the hearing, the Court believed this was a medical record of Plaintiff. However, it is actually a TPD form stating that Plaintiff does not consent to release of her medical exam at that time. The Consent Form does not implicate any "Confidential Information," as defined in the Protective Order, because the Consent Form relates only to Plaintiff. Therefore, this production did not violate ¶ 3. At a minimum, Bryan did not believe he was producing "confidential information" based on a reasonable and good-faith interpretation of ¶ 3.

However, Bryan's production of the Consent Form clearly violated ¶ 1(e), which prohibits production of non-confidential information for any purpose other than the litigation. Bryan also violated ¶ 2(f) because the Consent Form only previously appeared in the Court record under seal, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of

---

[8] The Swilling Video was not played during the hearing, but the Court viewed it in chambers following the hearing. Because it was not part of the summary judgment record, it was not discussed in the Court's order.

the Court without an order from the Court." Although Bryan violated the Protective Order, the Court is less concerned about this document entering the public realm because: (1) it relates solely to Plaintiff; and (2) the Court discussed in its Order that Plaintiff first told TPD about the rape on January 28, 2014, which appears to be the key fact gleaned from this document.

### 4. Texts

The Texts are marked "confidential," but they do not implicate any "confidential information," as that term is defined in the Protective Order. Therefore, this production did not violate ¶ 3. At a minimum, Bryan did not believe he was producing "confidential information" based on a reasonable and good-faith interpretation of ¶ 3.

However, Bryan's production of the Texts clearly violated ¶ 1(e), which prohibits production of non-confidential information for any purpose other than the litigation. Bryan also violated ¶ 2(f) because the Texts, in their entirety, only previously appeared in the Court record under seal, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." Although Bryan violated the Protective Order, the Court is less concerned about the entirety of the Texts entering the public realm because (1) the Texts relate solely to Plaintiff and Swilling, and (2) the Court discussed large portions of the Texts in its Order.

### C. Court Documents/Depositions

#### 1. Motion to Introduce Sexual Behavior

Consistent with Local Rule 79.1, TU moved to file its Motion to Introduce Sexual Behavior under seal, and the Court granted the motion by minute order. (Doc. 209.) TU then filed the document under seal, and Plaintiff never filed an objection. Bryan disputes that he provided the

actual sealed motion and testified that he merely directed the journalist to his unsealed reply brief discussing the Motion to Introduce Sexual Behavior.

TU has not shown by clear and convincing evidence that Bryan disclosed the Motion to Introduce Sexual Behavior. TU's Motion to File Motion to Introduce Plaintiff's Sexual Behavior Under Seal (Doc. 208) is a public record and discusses the content of the motion, as does the reply brief. The Article itself does not prove that the journalist had a copy of any sealed information, as there are no references beyond the title and general subject matter of the motion. Had a disclosure occurred, the disclosure would have technically violated ¶ 2(f). However, to be clear, the Court sealed the motion to protect Plaintiff's privacy, not to prevent the public from viewing TU's legal arguments.

### 2. Taylor Deposition

Taylor's deposition is marked "Contains Confidential Information," consistent with ¶ 2(c) of the Protective Order. TU marked specific pages within the deposition as confidential. Prior to producing the deposition to the journalist, Bryan omitted all "confidential" pages. This redacted version of the Taylor Deposition is the version attached to the online Article. The Court finds that Bryan's disclosure of the Taylor Deposition did not violate ¶ 3 because he omitted the specific pages marked confidential. At a minimum, Bryan did not believe he was producing "confidential information" based on a reasonable and good-faith interpretation of ¶ 3.

However, Bryan clearly violated ¶ 2(f) because the Taylor Deposition had been filed under seal in every instance, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." Both parties filed this entire deposition under seal when using it as an exhibit, and the Court viewed it as a sealed record. Although the Court extensively discussed Taylor's deposition in its summary judgment order, an

attorney cannot unilaterally decide a record has been effectively unsealed because a Court discussed its contents in a public order.

### 3. Livingston Deposition

The Livingston Deposition is not marked confidential, and no individual pages are marked confidential. It therefore does not implicate ¶ 3. However, Bryan violated ¶ 2(f) because the Livingston Deposition had been filed under seal in every instance by both parties, and ¶ 2(f) provides that no "other person may have access to any sealed document from the files of the Court without an order from the Court." Bryan needed Court permission to disclose this deposition.

### D. Comments

The Article quotes Clune as stating: "I've never seen a school so aggressively try to defend a case by arguing the accuser was a slut and a crazy girl." The Article quotes Bryan as stating: "It [TU] claimed that destruction was OK because the survivor did not report a crime, an assertion clearly disputed in the 2014 re-interview." TU contends these are improper comments on protected evidence.

The Comments do not violate the Protective Orders or reveal confidential information. The Comments are general in nature and are based on the attorneys' personal views and interpretation of the evidence.

### E. Summary

The Court finds Bryan committed the following violations of the relevant Protective Order:

Jane Doe Audio - ¶¶ 3, 1(e), 2(f)
TPD Report - ¶¶ 3, 1(e), 2(f)
Swilling Video - ¶¶ 1(e), 2(f)
Consent Form - ¶¶ 1(e), 2(f)
Texts - ¶¶ 1(e), 2(f)
Taylor Deposition - ¶ 2(f)
Livingston Deposition - ¶ 2(f)

In committing these violations, Bryan acted in disregard of and/or based upon an unreasonable interpretation of the Protective Orders. Although he was taking an admittedly narrow view of the Protective Orders, Bryan failed to take the simple step of requesting the Court's permission. These violations support a finding of civil contempt. *See Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1439 (N.D. Ill. 1995) (noting that if the attorney "had any doubts about exactly what he could or could not disclose, he had the continued opportunity to seek clarification" and that when "a defendant undertakes his own interpretation of an order, and does not seek clarification, then he proceeds at his peril").[9]

## IV. Sanctions

Sanctions for civil contempt may only be employed for two remedial purposes: (1) to coerce obedience to a court order; or (2) to compensate the complainant for injuries resulting from non-compliance with a court order. *O'Connor*, 972 F.2d at 1211; *see also Home Design Servs., Inc. v. B & B Custom Homes, LLC*, No. CIV.A. 06-CV-00249WY, 2008 WL 927683, at *2 (D. Colo. Apr. 3, 2008) (explaining that civil contempt "has a remedial objective and seeks to compel compliance with a Court order for the benefit of the complainant"). Where a sanction is coercive, the court must consider the character and magnitude of the harm and the probable effectiveness of a suggested sanction in bringing about the desired result. *O'Connor*, 972 F.2d at 1211. Where a sanction is compensatory, the amount of the fine must be based on actual losses sustained as a result of non-compliance with the Court order. *Id.* "Actual losses" can include attorney's fees incurred in preparing a motion for contempt. *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1091 (10th

---

[9] Bryan's conduct pales in comparison to the lawyer sanctioned in the *Grove Fresh* case, and it is cited merely for the quoted legal principle. In *Grove Fresh*, the court found a willful violation and required the lawyer to post a $50,000 bond for five years to "save the Grove Fresh defendants from a significant risk of repetition of future disclosures . . . and perhaps to save [the lawyer] from himself").

18

Cir. 2010) (affirming district court's sanction ordering attorney to pay fees incurred by opposing party in preparing motion for sanctions premised upon attorney's violation of protective order).

The Court finds compensatory sanctions to be appropriate.[10] Bryan agreed to the Protective Orders in order to obtain documents, and TU and non-parties produced documents in reliance upon these agreements. All parties filed certain discovery materials under seal throughout the litigation. Yet Bryan produced protected and/or sealed documents to the press without seeking Court permission. He adopted an unreasonably narrow interpretation of §1(e), and he disregarded § 2(f) based on his decision that the parties and/or the Court erred in sealing a particular record. This "disclose now, ask for forgiveness later" approach justifies a finding of civil contempt and sanction.

TU has shown that it suffered actual losses of attorney's fees and costs in prosecuting this motion; however, TU has not shown any other actual losses flowing from the violations. According to Brown, TU trustees expressed concern regarding Clune's comment that TU portrayed Plaintiff as a "slut" and "crazy girl" as a defense strategy. Specifically, they were concerned this would discourage victims from reporting assault on campus. Unhappiness and concern of TU trustees is not an actual, quantifiable loss that supports a particular amount of compensatory sanction. Accordingly, the Court finds that the only appropriate sanction is ordering Bryan to pay TU's attorney's fees and costs for bringing the Motion for Civil Contempt. The Court declines to impose other sanctions requested by TU, including precluding any party from further public comment or rescinding Clune's *pro hac vice* status.

## V.    Conclusion

The press has a right, and indeed an obligation, to report on this case. Public awareness and dialogue are important steps toward addressing the issue of sexual assault on college campuses.

---

[10] TU has not requested any coercive sanctions to compel obedience to Court orders.

However, attorneys must follow procedures in order for court proceedings to properly function. In this case, the Court entered protective orders and sealed certain court filings, primarily to protect the privacy of former TU students. Instead of seeking relief from these orders, Bryan unilaterally decided to release sealed documents to the press. Therefore, a moderate sanction is proper to compensate TU for its fees and costs in filing this motion.

TU's Motion for Contempt (Doc. 311) is GRANTED. TU shall file a motion for attorneys' fees and costs with supporting time records no later than two weeks from the date of this Order.

**SO ORDERED** this 21st day of November, 2016.

*Terence C Kern*

**TERENCE C. KERN**
**United States District Judge**