# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ABIGAIL ROSS, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 14-CV-484-TCK-PJC |
| | ) |
| UNIVERSITY OF TULSA, | ) |
| | ) |
|       **Defendant.** | ) |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Attorney's Fees and Costs (Doc. 325).

**I.    Factual Background**

On June 27, 2016, while the Court's grant of summary judgment to Defendant was pending on appeal, Defendant filed a Motion for Civil Contempt. Therein, Defendant argues that Plaintiff and/or Plaintiff's counsel violated the terms of protective orders when they disclosed certain evidence to the press. Defendant first learned of this disclosure upon reading a published news article containing information from materials that had been kept confidential throughout the litigation. Defendant's Motion for Civil Contempt was approximately fourteen pages in length. The first eleven pages of the motion set forth the categories of wrongfully disclosed information and included extensive quotations. The "Arguments and Authority" section, which was approximately two pages in length, contained basic principles of law and a one-paragraph application of the law. The remaining part of the motion requested relief and listed the expected hearing evidence.

In his response to the Motion for Civil Contempt, Plaintiff's counsel, Spencer Bryan ("Bryan"), admitted to disclosing the materials to the press but contended that such disclosures were not confidential based on his reasonable interpretation of the protective order. Bryan's admission eliminated the need for evidence as to who disclosed the information. Thus, following the parties'

Joint Notice of Stipulation (Doc. 319), the Court anticipated that the hearing would be limited to arguments as to the scope and meaning of the protective order. Defendant's reply brief, which was nine pages in length, did not contain significant legal analysis and was primarily devoted to reciting the terms of the protective orders and explaining why certain materials had or had not previously been made public.

On September 28, 2016, the Court conducted a sealed hearing on the motion for contempt. Defendant called witnesses primarily to establish what confidential information, if any, had been previously disclosed or unsealed. This included testimony of Defendant's counsel, John Lackey ("Lackey"). The Court permitted this evidence, although the Court had already familiarized itself with its docket and determined whether information given to the press had or had not previously been made public. In other words, although the Court granted Defendant leeway to present this evidence, much of it was evidence of which the Court could take judicial notice.

On November 21, 2016, the Court granted Defendant's Motion for Civil Contempt and found that Bryan committed several violations of the protective orders. The Court concluded that a compensatory sanction for civil contempt was appropriate to compensate Defendant for "actual losses" suffered as a result of Bryan's non-compliance with the protective orders. The Court found that the only actual losses suffered by Defendant were fees and costs associated with prosecuting the Motion for Civil Contempt, and the Court declined to impose other sanctions requested by Defendant. The Court described the sanction as "moderate" and contrasted Bryan's conduct with significantly more egregious conduct by an attorney who had repeatedly and more purposefully disclosed confidential information. (*See* Doc. 324 at 18 & n.9.) The Court anticipated that Defendant's fees incurred in conjunction with the motion would be in the range of $10,000.00-

$15,000.00.

In Defendant's Motion for Attorney's Fees and Costs (Doc. 325) currently pending before the Court, Defendant seeks a total of $49,466.26. This includes time spent by two attorneys and two paralegals in conjunction with: preparation of the Motion for Civil Contempt; preparation of the reply brief in support of the Motion for Civil Contempt; preparation for and attendance at the hearing; and follow-up matters after the hearing. Defendant sought the following amounts in fees and costs:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| John David Lackey (attorney) | 158.3 hours | $200.00 | $31,660.00 |
| Amy Nicole Bennett ("Bennett") (attorney) | 21.2 | $175.00 | $3,710.00 |
| Chandler Hope Carney (paralegal) | 21.2 | $150.00 | $3,180.00 |
| Keith John Flinn ("Flinn") (paralegal) | 72 | $150.00 | $10,800.00 |
| Total: | | | $49,350.00 |
| Costs: | | | $116.26 |
| **Total Award Sought:** | | | **$49,466.26** |

Bryan objects to the fee request on grounds that: (1) the application includes time for matters that were not essential or necessary to prosecuting the Motion for Civil Contempt, including time spent on an overly aggressive litigation strategy aimed at leveraging the underlying litigation; (2) the application does not reflect sound billing judgment; (3) the application reflects duplication of efforts; (4) some entries are block billed; and (5) the application improperly requests fees for time spent by non-lawyers.

**II.     Standard**

Defendant does not argue that the Court must award all fees, regardless of their reasonableness, because the fee award is in the form of a sanction. This argument has been rejected under extremely similar circumstances, *see United States v. Attaluri*, 34 F. Supp. 2d 1280, 1283 (N.D. Okla. 1999), and is also rejected by this Court. Although the Court originally couched its civil contempt sanction in terms of compensating Defendant for "actual losses," (*see* Doc. 324 at 18-19), it would have been more accurate to characterize the sanction as a *reasonable* fee award. In other words, the Court never intended to "provide [Defendant] with a blank check, to be filled in with whatever amount [Defendant] desired." *See Attaluri*, 34 F. Supp. 2d at 1283. As in *Attaluri*, the Court did not intend its "award of attorney fees to be considered a fine, but, rather, intended for the government to pay defendants the reasonable fees incurred as a result of prosecuting the motion, in light of the fact that no other remedy was appropriate." *Id.* Nor did the Court intend for the sanction to necessarily include all fees actually billed to and paid by a client. The Court instead intended to conduct a reasonableness analysis as it would in any fee-shifting case. *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (explaining that "awards made under the authority of fee-shifting statutes are not intended to replicate fees which an attorney could earn through a private fee arrangement with a client, particularly if the client had agreed to an aggressive litigation strategy and the inevitably resultant higher fees"). Therefore, the Court will consider the reasonableness of the requested fees, as it would in a fee-shifting situation, even though the fee award is a sanction for civil contempt.

Generally, the "proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate." *Id*. "The fee applicant should exercise billing judgment with respect to

the number of hours worked and billed." *Id.* "Billing judgment consists of winnowing hours actually expended down to hours reasonably expended." *Id.* Another relevant factor is the reasonableness of the fees in light of the success obtained, which requires consideration of the overall relief obtained in relation to the number of hours reasonably expended. *Id.*

## III. Fee Award

### A. General Observations

As explained by the Tenth Circuit, clients may agree to aggressive litigation strategies for various reasons. *Id.* at 1257. In this case, although it did not suffer any actual losses flowing from the violation of the protective order, Defendant aggressively sought to pursue civil contempt sanctions against Plaintiff and requested an evidentiary hearing on the matter even after Bryan admitted to certain facts. It is irrelevant what motivated Defendant to authorize its counsel to expend a substantial degree of time and effort prosecuting this motion. Nor does the Court fault Defendant or its counsel for doing so. Nonetheless, when the Court issued its sanction in the form of a fee award, the Court did not anticipate or suspect that Defendant's counsel collectively spent over 272 hours in relation to a single motion and a single hearing, or that Defendant would seek to recover almost $50,000 in fees. The Court had no intention then, and has no intention now, of imposing a sanction against Bryan for violations of the relevant protective orders in an amount anywhere near $50,000.

### B. Success Obtained

While Defendant prevailed on its Motion for Civil Contempt, it obtained limited success in relation to the time spent. Defendant requested five forms of relief, only one of which was awarded. Defendant vindicated the underlying principles of the protective orders and the integrity of the

5

Court's sealing process, but it did not meaningfully advance its standing in the actual litigation. This factor, in the Court's view, warrants a significant reduction of any lodestar amount.

**C. Objections**

Bryan does not object to the hourly rates, and the Court finds that all requested hourly rates are reasonable in the Tulsa market. The Court makes the following findings regarding certain objections to the fee award: (1) the Court finds that it was necessary for Bennett to attend the hearing because she questioned Lackey; (2) the Court does not find any reduction warranted for block billing; (3) the Court finds Lackey's affidavit sufficient and will not disallow fees based on the other timekeepers' failure to file affidavits; and (4) the Court finds that non-lawyer time is compensable as part of a fee award, *see Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

**D. Lodestar/Billing Judgment**

The Court sustains Bryan's objection to excessive time spent and duplication of efforts. The Court finds that, for purposes of a reasonable fee award to be shifted to opposing counsel, the time spent prosecuting this single motion was excessive. First, Lackey's time drafting the motion (30 hours) and reply (26 hours) is excessive. Both briefs were largely recitations of the disclosed evidence and did not require significant legal research or analysis. Defendant argues that, due to Plaintiff's assertion that certain items were already public, it took significant time to scrutinize the docket sheet and pleadings to determine if documents had in fact been previously unsealed or disclosed. The Court is highly familiar with the docket sheet and the time required to ascertain this information, and this does not justify the excessive time spent. Further, Flinn and Lackey appear to have duplicated efforts in this regard.

Second, the Court finds Lackey and Bennett billed excessively for hearing preparation.

6

Lackey billed over 21 hours for hearing preparation, and Bennett billed over 14 hours.  Again, this was a hearing on a single motion.  Defendant's counsel knew, or could have known, in advance of the hearing that Bryan did not intent to present evidence and merely disputed the meaning of the protective orders.  Bryan is correct that, based on the Joint Notice of Stipulation, the Court believed the hearing would likely be limited to legal arguments regarding the meaning of the protective orders.  While the Court never intended to preclude Defendant from presenting witnesses if it desired to do so, none of those witnesses were crucial to the Court's resolution of the motion or the interpretation of the protective orders.  The one witness presented on damages, which was information the Court did not already have, testified briefly and failed to establish any loss suffered by Defendant. While the Court does not mean to discourage zealous advocacy or overpreparation for a hearing, a party cannot expect those fees to be awarded as part of a reasonable attorney fee award or sanction.

With these principles in mind, the Court finds the following calculations to represent reasonable hours multiplied by reasonable rates spent prosecuting the Motion for Civil Contempt.

| Timekeeper | Rate | Reasonable Hours | Total |
| --- | --- | --- | --- |
| Lackey | $200.00 | 60 hours (reduced from 158.3) | $12,000.00 |
| Bennett | $175.00 | 12 hours (reduced from 21.2) | $2,100.00 |
| Carney | $150.00 | 5 hours (reduced form 21.2) | $750.00 |
| Flinn | $150 | 20 hours (reduced from 70) | $3,000 |
| Costs: |  |  | $116.26 |
|  |  |  | $17,966.26 |

### E. Other Reductions

Based on the Court's general observations explained above regarding its intentions in entering the sanction and the limited success obtained by Defendant, the Court finds that a further reduction of $5,000.00 from the Court's lodestar calculation is warranted. This results in a total fee award of $12,966.26 to be paid by Bryan to Defendant.

### IV. Conclusion

Defendant's Motion for Attorney's Fees and Costs (Doc. 325) is GRANTED in the amount of $12,966.26. Bryan shall pay this amount to Defendant as a sanction for violating the terms of the protective orders and disclosing certain confidential materials to the press without first requesting permission from the Court.[1]

**SO ORDERED** this 8th day of September, 2017.

_____
**TERENCE C. KERN**
**United States District Judge**

---

[1] Bryan raised the issue of whether Defendant will receive a windfall, since it appears that insurance companies already paid Defendant's counsel's legal bills. Bryan suggested the Court order him to pay the sanction to a local non-profit entity that assists survivors of sexual assault, rather than to Defendant. The Court rejects this proposal by Bryan, and Defendant will receive the funds. However, the Court encourages Defendant to consider spending the money as suggested by Bryan or to combat sexual violence on its campus.